IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JOAQUIN SIERRA,                           Civ. No. 07-0075-HO

        Plaintiff,                    ORDER

   v.

SHERIFF RAUL RAMERIZ, et al,

        Defendants.


    Plaintiff, Joaquin Sierra (Sierra) an inmate appearing *pro se*, filed suit against defendants, Marion County Sheriff Department Sheriff Raul Ramirez and Marion County Deputy Ron Cereghino, claiming that defendants used excessive force during his January 14, 2005 arrest, in violation of his constitutional rights. [#1].

    Defendants move for summary judgment on all of Sierra's claims arguing that although potentially deadly force was used in Sierra's arrest, it was reasonable and warranted at the time and therefore did not violate his constitutional rights. [#38, #40].

## Discussion

All claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395 (1989). Determination of whether the force used is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham,* 490 U.S. at 396.

Oregon law allows law enforcement officers to use deadly force in making an arrest when the officer reasonably believes that: (a) the crime committed by the person was a felony or an attempt to commit a felony involving the use or threatened imminent use of physical force against a person; or (b) the crime committed by the person was kidnaping, arson, escape in the first degree, burglary in the first degree or any attempt to commit such a crime; or (c) regardless of the particular offense which is the subject of the arrest or attempted escape, the use of deadly physical force is necessary to defend the peace officer or another person from the use or threatened imminent use of deadly physical force; or (d) the crime committed by the person was a felony or an attempt to commit a felony and under the totality of the circumstances existing at the time and place, the use of such force is necessary; or (e) The officer's life or personal safety

is endangered in the particular circumstances involved.  ORS
161.239.

The test of reasonableness requires careful attention to the
totality of circumstances in each case including the severity of
the crime at issue, whether the suspect poses an immediate threat
to the safety of the officers or others, and whether he is
actively resisting arrest or attempting to evade arrest by
flight.  *Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985).

I.   Undisputed Facts:

The following facts are undisputed.  On January 14, 2005,
Raul Ramirez was the duly-elected Sheriff of Marion County and
Ronald Cereghino, Heath Nelson and Jon Gadberry were employed as
Marion County Sheriff's Deputies in the Enforcement Division.

The Pilot Truck Stop (truck stop) in Brooks, Oregon, is
located on the southwest corner of the interchange of Interstate
5 and Brooklake Road.  The main building contains a general
merchandise/grocery store, a Subway franchise, a Taco Bell
franchise, restrooms, showers and an arcade.  The main building
has three entrances, one each on the north, south and west sides
of the building.

Deputies Nelson, Gadberry and Cereghino responded to
dispatches of a possible armed robbery involving hostages at the
truck stop on January 14, 2005.  All three deputies were wearing
their Marion County police uniforms when they responded.  They

3 - ORDER

approached the south entrance of the truck stop, took up
positions on either side of that entrance and saw plaintiff
through the windows.  They all entered the truck stop through
that south entrance.

As the deputies jointly entered the truck stop, Deputy
Gadberry's rifle jammed and could not fire.  Deputy Cereghino
fired two rounds from his handgun striking plaintiff who fell to
the ground.  Plaintiff was given first aid, medics were called
and plaintiff was transported by ambulance from the scene.

II   Summary Judgment Standard:

Summary judgment is proper when it is shown that there
exists "no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56.  A fact is "material" if it is relevant to an
element of a claim or a defense, the existence of which may
affect the outcome of the suit.  *T.W. Elec. Serv. Inc. v.
Pacific Elec Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.
1987).  Materiality is determined by the substantive law
governing a claim or a defense.  *Id.*  The evidence and all
inferences drawn from it must be construed in the light most
favorable to the nonmoving party.  *Id.*

To carry its burden of production on summary judgment
adjudication, a moving party "must either produce evidence
negating an essential element of the nonmoving party's claim or

4 - ORDER

defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. V. Fritz Companies Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000).  Thus the moving party must persuade the court that there is no genuine issue of  material fact.  *Nissan Fire*, 210 F.3d at 1102.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

III. Defendants' Motion for Summary Judgment:

It is well established that qualified immunity protects government officials from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); see also, *KRL v. Moore,* 384 F.3d 1105, 1116 (9th Cir.2004).

The standard by which reasonableness is analyzed in qualified immunity, is the same as that used in assessing reasonableness of probable cause. *United States v. Gorman,* 314 F.3d 1105, 1111 (9th Cir. 2002).  Qualified immunity is immunity from suit rather than a mere defense to liability and like an absolute immunity, is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth,* 472 U.S. 5111,

5 - ORDER

526 (1985).

Here, the deputies declare that looking through the truck stop's south entrance windows, they observed injured hostages[1] being held behind the service desk by plaintiff who was armed with a crossbow[2].  The deputies also contend that upon entering the truck stop they yelled warnings such as "Sheriff's Office, let me see your hands!"  "Sheriff's Office, drop it!"  "Drop it, drop it!."  They further contend that plaintiff did not comply with their orders and pointed the crossbow at the deputies before he was shot by one of them.

Plaintiff disputes these material facts.  He apparently disputes that he was intoxicated, armed with a crossbow, holding hostages and that he received warnings from the deputies before he was shot.  Plaintiff offers no evidence to support his assertions.

At this stage of litigation, the issues of material fact need not be resolved conclusively in favor of the party asserting its existence; all that is required is sufficient evidence supporting the claimed factual dispute to require a fact finder

---

[1]    One hostage had a bloody nose and mouth.

[2]    Dispatchers had told the officers that the plaintiff had loaded, cocked and pointed the crossbow at the hostages he had ordered behind the service desk.  The surveillance video confirms that plaintiff was holding a crossbow and was brandishing it in the direction of the hostages and others in the truck stop.

6 - ORDER

to resolve the differing versions of events at trial. *Sankovich v. Life Ins. Co. Of N. America*, 638 F.2d 136, 140 (9th Cir. 1981). However, it is not enough for a party to show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.* at 587.

The record before the court includes the surveillance tape from the truck stop which makes it abundantly clear that plaintiff was actively brandishing a crossbow both at the hostages behind the service counter and at the people in the truck stop. He continued to brandish his weapon right up to the instant he is shot. There is no indication that plaintiff attempted to drop his weapon before he was shot.

Despite plaintiff's protestations, the evidence before the court substantiates that a reasonable officer would perceive that plaintiff brandishing his crossbow, posed a substantial risk of imminent threat of injury or death to the hostages as well as to the deputies responding to the call. Even taking the facts in the light most favorable to plaintiff (assuming the weapon he brandished was not loaded[3] and he was not intoxicated), I find

---

[3]    Although the surveillance video would seem to disprove that, given it appears to show plaintiff arming the crossbow shortly before he was shot.

7 - ORDER

that defendant Deputy Cereghino acted reasonably.

I find that defendant Deputy Cereghino's decision to shoot plaintiff was objectively reasonable given the fact that he had to make a split-second decision in a tense and uncertain situation involving hostages. Because defendant Deputy Cereghino's use of deadly force was reasonable under the circumstances presented and was not excessive, plaintiff suffered no constitutional violation from those actions. *Scott v. Harris* 550 U.S. 372, 381-82 (2007)(all that matters is whether the officer's actions were reasonable). Given that there was no constitutional violation of plaintiff's rights, there is no necessity for further analysis concerning Deputy Cereghino's entitlement to qualified immunity. Defendant Cereghino is granted summary judgment on plaintiff's §1983 claims.

Similarly, state and county officials are not liable under 42 U.S.C. §1983 claims on a *respondent superior* theory. *Monell v. Dept. of Soc Serv of City of New York,* 436 U.S. 658, 691-94 (1978); see also *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987). A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989).

In this matter, the record before the court is clear: shots

were fired at 3:08:47 a.m.; medics were called at 3:09:15 a.m.; Sheriff Ramirez was enroute to the scene at 3:32:44 a.m.; and arrived at the scene at 3:43:08 a.m. [#44 - Ex 9,p.2].

Plaintiff's allegations that the Deputy shot him under direct orders from the Sheriff are without substantiation in the record and lack merit. Plaintiff offers only his bald statement asserting that Sheriff Ramirez was directly involved. Similarly he does not plausibly allege that the County has an unconstitutional policy or practice or that the Sheriff showed deliberate indifference to a constitutional violation. For these reasons, Sheriff Ramirez is also granted summary judgment on plaintiff's §1983 claims.

                              Conclusion

Based on the foregoing, defendants' motion for summary judgment [#38] is GRANTED. This action is dismissed with prejudice.

IT IS SO ORDERED.

DATED this __10th__ day of February, 2010.


                              __s/ Michael R. Hogan_____

                              United States District Judge



9 - ORDER